FILED

MAR 1 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

M. BLOCK & SONS, INC.,                    )
                                          )
                 Plaintiff,               )    Case No. 04C 0340
                                          )
                                          )    Honorable Amy J. St. Eve
        v.                                )
                                          )    Magistrate Judge Mason
INTERNATIONAL BUSINESS MACHINES           )
CORP. ("IBM"),                            )
                                          )
                 Defendant.               )

DOCKETED
MAR 2 4 2004

FILED

MAR 1 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF MOTION

TO:    Hillard M. Sterling                 Clyde H. Wilson, Jr.
       **Much Shelist Freed Denenberg**    John S. Jaffer
       **Ament & Rubenstein, P.C.**        **Wilson Jaffer, P.A.**
       191 N. Wacker Drive, Suite 1800     27 South Orange Avenue, Suite 1
       Chicago, Illinois 60606             Sarasota, Florida 34236

        **PLEASE TAKE NOTICE** that on Wednesday, March 24, 2004, at 9:00 a.m., or as soon
thereafter as counsel may be heard, we shall appear before the Honorable Amy J. St. Eve or any
Judge occupying her stead in Room 1241 of the United States District Court for the Northern
District of Illinois located at 219 S. Dearborn Street, Chicago Illinois, and shall then and there
present the attached **Motion To Dismiss Counts I, II, III, VI And VII Of Block's Amended
Complaint And Claims for Consequential Damages, And ERPBridge Express Warranty**, a
copy of which is hereby served upon you.

Dated:   March 19, 2004                    Respectfully submitted,

                                           INTERNATIONAL BUSINESS MACHINES
                                           CORPORATION

                                           By: _____
                                                One of its Attorneys

Todd C. Jacobs
Paul A. Sheldon
Erin E. O'Connor
GRIPPO & ELDEN LLC
227 West Monroe Street, Ste. 3600
Chicago, Illinois 60606
(312) 704-7700



FILED

MAR 1 8 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

M. BLOCK & SONS, INC.,                    )
                                          )
                Plaintiff,                )
                                          )
v.                                        )        Case No. 04C 0340
                                          )        Judge Amy J. St. Eve
INTERNATIONAL BUSINESS                    )
MACHINES CORPORATION ("IBM")              )
                                          )
                Defendant.                )

DOCKETED
MAR 2 4 2004

**IBM's MOTION TO DISMISS COUNTS I, II, III, VI, AND VII OF BLOCK'S
AMENDED COMPLAINT AND CLAIMS FOR CONSEQUENTIAL DAMAGES,
AND ERPBRIDGE EXPRESS WARRANTY**

International Business Machines Corporation ("IBM") moves the Court,

pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Counts I, II, III, VI, VII,

claims for consequential damages (in Counts III-VII), and warranty claim relating to

ERPBridge software (¶ 58 of Count IV), of Plaintiff M. Block & Sons, Inc.'s ("Block")

Amended Complaint. In support of its motion, IBM states as follows:

      1.     Block filed an Amended Complaint against IBM asserting claims

for: (1) fraudulent inducement – misrepresentations (Count I); (2) fraudulent inducement

– concealments (Count II); (3) violation of the Illinois Consumer Fraud Act ("ICFA")

(Count III); (4) breach of express warranties (Count IV); (5) material breaches of contract

(Count V); (6) breach of implied warranty of merchantability (Count VI); and (7) breach

of implied warranty of fitness for particular purpose (Count VII). Block's claims arise

from an alleged failed implementation of JD Edwards Enterprise Resource Planning

("ERP") and related software. See Am. Cmplt. ¶¶ 13, 20, 25, 26, 29.



2.      First, Block's implied warranty claims (Counts VI and VII) are barred because the contract entered into between the parties expressly and conspicuously disclaims any such warranties.  Accordingly, these claims are deficient as a matter of law and should be dismissed with prejudice.

3.      Second, the allegations of ¶ 58 (in Count IV) relating to an alleged warranty for ERPBridge software should similarly be dismissed or stricken because this software was provided "as is," and with no warranty express or implied.[1]

4.      Third, Block's ICFA, breach of contract, and breach of warranty claims (in Counts III-VII) seek recovery for consequential and incidental damages that are barred by the express terms of the contract.  These claims are deficient as a matter of law and should be dismissed with prejudice.[2]

5.      Fourth, Block fails to state a claim for violation of the ICFA (Count III) because the contract contains a New York choice-of-law provision.  Accordingly, Block's ICFA claim is deficient as a matter of law and should be dismissed.

6.      Finally, Block's claims for fraudulent inducement (Counts I and II) fail for multiple reasons.  The alleged "misrepresentation" upon which Block bases these claims is a non-actionable statement of opinion, not a statement of material fact upon which it could reasonably rely.  Further, the contract's non-reliance and integration clauses preclude Block as a matter of law from relying on an alleged oral representation

---

[1]      IBM did not move to dismiss Count IV in its entirety because it did warrant that the services provided to Block would be provided using reasonable care and skill.  Block makes no warranty claim relating to the ERP software itself, because that software was provided to it by JD Edwards.  IBM has answered the remainder of Block's Count IV breach of express warranty claim and the Count V breach of contract claim.

[2]      Relevant caselaw discusses dismissal of legally deficient damages claims under Rule 12(b)(6).  In the alternative, and out of an abundance of caution, IBM also moves that these legally deficient damages claims (¶¶ 56, 62, 66, 73, 80, and prayer for relief) be stricken with prejudice pursuant to Rule 12(f).

that occurred nearly a year prior to the execution of the contract. In all events, Block's recharacterization (in Count II) of the alleged "misrepresentation" is not even fraudulent. For all of these reasons, Counts I and II should be dismissed.

7.    IBM files concurrently herewith a Memorandum of Law in support of its motion and incorporates the arguments set forth therein by this reference.

WHEREFORE, International Business Machines Corporation respectfully requests that the Court dismiss with prejudice (1) Counts I, II, III, VI, VII, (2) claims for consequential and incidental damages (in Counts III-VII), and (3) warranty claim relating to ERPBridge software (¶ 58 of Count IV), of M. Block & Sons' Amended Complaint.

Dated: March 19, 2004

Respectfully submitted,

INTERNATIONAL BUSINESS
MACHINES CORPORATION

By:    _____
       One of Its Attorneys

Todd C. Jacobs
Paul A. Sheldon
Erin E. O'Connor
GRIPPO & ELDEN LLC
227 W. Monroe, Ste. 3600
Chicago, Illinois 60606
(312) 704-7700

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
MAR 2 4 2004

| | |
|---|---|
| M. BLOCK & SONS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04C 03 **FILED** |
| | ) Judge Amy J. St. Eve |
| INTERNATIONAL BUSINESS | ) |
| MACHINES CORPORATION ("IBM") | ) MAR 1 9 2004 |
| | ) |
| Defendant. | ) MICHAEL W. DOBBINS |
| | CLERK, U.S. DISTRICT COURT |

**MEMORANDUM OF LAW IN SUPPORT OF IBM's
MOTION TO DISMISS COUNTS I, II, III, VI and VII OF BLOCK'S
AMENDED COMPLAINT AND CLAIMS FOR CONSEQUENTIAL DAMAGES,
AND ERPBRIDGE EXPRESS WARRANTY**

Todd C. Jacobs
Paul A. Sheldon
Erin E. O'Connor
GRIPPO & ELDEN LLC
227 West Monroe Street
Suite 3600
Chicago, Illinois 60606
(312) 704-7700

*Attorneys for Defendant
International Business Machines
Corporation*

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

1.     Relevant Contract Terms. .............................................................................................2

2.     Allegations Of Block's Amended Complaint. .............................................................5

ARGUMENT ............................................................................................................................6

I.      BLOCK'S IMPLIED WARRANTY CLAIMS (COUNTS VI AND VII) MUST BE DISMISSED BECAUSE THEY WERE CONSPICUOUSLY DISCLAIMED. ..........6

II.     BLOCK'S COUNTS III–VII CLAIMS FOR CONSEQUENTIAL AND INCIDENTAL DAMAGES MUST BE DISMISSED PURSUANT TO THE LIMITATION OF LIABILITY PROVISION. .........................................................8

III.    BLOCK'S ICFA CLAIM MUST BE DISMISSED BECAUSE THE PARTIES AGREED NEW YORK LAW APPLIES. ....................................................................9

IV.   BLOCK'S FRAUDULENT INDUCEMENT CLAIMS (COUNTS I AND II) ARE LEGALLY DEFICIENT FOR MULTIPLE REASONS. .....................................11

      A.     The Alleged "Misrepresentation" Forming the Basis of Counts I and II Is a Subjective Opinion, Not a Statement of Material Fact. .......................................11

      B.     The Opinion Statements Allegedly Relied on By Block Are Also Not Actionable In Light of the Contracts' Non-Reliance and Integration Clauses. ...............................................................................................................14

CONCLUSION .......................................................................................................................15

i

# TABLE OF AUTHORITIES

## CASES

Page

Amaro v. Capital One Bank,
   No. 97 Civ. 4638, 1998 WL 299396 (N.D. Ill. May 21, 1998) ...............................................11

Bavaria Int'l. Aircraft Leasing v. Clayton,
   No. 03 Civ. 0377, 2003 U.S. Dist. LEXIS 13197 (S.D.N.Y. July 30, 2003) ..........................12

Breckenridge v. Cambridge Homes, Inc.,
   246 Ill. App. 3d 810, 616 N.E.2d 615 (2d Dist. 1993) ...........................................................12

Chaikin v. Fidelity and Guar. Life Ins. Co.,
   No. 02 Civ. 6596, 2003 WL 21003715 (N.D. Ill. May 1, 2003)...............................................11

Chicago Messenger Service, Inc. v. Nextel Communications, Inc.,
   No. 01 Civ. 8820, U.S. Dist. LEXIS 16744 (N.D. Ill. Sept. 23, 2003) ...................................14

Cognitest Corp. v. Riverside Publishing Co.,
   107 F.3d 493 (7th Cir. 1997) .......................................................................................................8

Connick v. Suzuki Motor Co., Ltd.,
   275 Ill. App. 3d 705, 656 N.E.2d 170 (1st Dist. 1995)............................................................12

Dallas Aerospace, Inc. v. CIS Air Corp.,
   352 F.3d 775 (2nd Cir. 2003) .......................................................................................................7

DeJohn v. The .TV Corporation Int'l,
   245 F. Supp. 2d 913 (N.D. Ill. 2003).........................................................................................10

Demitropoulos v. Bank One Milwaukee, N.A.,
   915 F. Supp. 1399 (N.D. Ill. 1996).............................................................................................11

Donovan v. ABC-NACO, Inc.,
   No. 02 Civ. 1951, 2002 U.S. Dist. LEXIS 12797 (N.D. Ill. July 12, 2002).............................14

Eldor Contr. Corp. v. County of Nassau,
   272 A.D.2d 509, 708 N.Y.S.2d 447 (N.Y. App. Div. 2000) ......................................................8

Fagenholz v. AMF Inc.,
   No. 85 Civ. 3456, 1995 U.S. Dist. LEXIS 13123 (N.D. Ill. December 5, 1995) ....................12

Galdikas v. Fagan,
    No. 01 Civ. 4268, 2001 WL 1223539 (N.D. Ill. Oct. 12, 2001)................................13

Gates Rubber Co. v. USM Corp.,
    508 F.2d 603 (7th Cir. 1975) ........................................................................................9

General Electric Capital Corp. v. Munson Marine, Inc.,
    No. 91 Civ. 5090, 1991 WL 256680 (N.D. Ill. Nov. 20, 1991)..................................7

Goldberg v. KZ 72nd,
    567 N.Y.S.2d 249, 171 A.D.2d 525 (N.Y. App. Div. 1991) .....................................14

Harsco Corporation v. Segui,
    91 F.3d 337 (2d Cir. 1996) .........................................................................................14

Hologic, Inc. v. Dunworth,
    No. 98 Civ. 3200, 1999 U.S. Dist. LEXIS 11263 (N.D. Ill. July 19, 1999)............11

Klaxon Co. v. Stentor Electric Mfg. Co.,
    313 U.S. 487 (1941).......................................................................................................9

Kronos Products, Inc. v. Sasib Bakery Northern America, Inc.,
    No. 00 Civ. 670, 2002 U.S. Dist. LEXIS 10684 (N.D. Ill. June 13, 2002) ..............11

Laidlaw Transportation, Inc. v. Helena Chemical Co.,
    255 A.D.2d 869, 680 N.Y.S.2d 365 (N.Y. App. Div. 1998) ......................................9

Landis and Staefka (UK) Ltd. v. Flair International Corp.,
    60 F. Supp. 2d 14 (E.D.N.Y. 1999) ..............................................................................7

Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd.,
    946 F. Supp. 1358 (N.D. Ill. 1996)...............................................................................9

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972).........................................................................................................10

Maltz v. Union Carbide Chemicals & Plastics Co., Inc.,
    992 F. Supp. 286 (S.D.N.Y. 1998) ...............................................................................7

Man Roland Inc. v. Quantum Color Corp.,
    57 F. Supp. 2d 568 (N.D. Ill. 1999) ..............................................................................9

Midway Home Entertainment, Inc. v. Atwood Richards, Inc.,
    No. 98 Civ. 2128, 1998 WL 774123 (N.D. Ill. Oct. 29, 1998).................................10

Randazzo v. Harris Bank of Palatine,
     104 F. Supp. 2d 949 (N.D. Ill. 2000) ...............................................................................11

In re: Razorfish, Inc. Securities Litigation,
     No. 00 Civ. 9474, 2001 U.S. Dist. LEXIS 14756 (S.D.N.Y. September 19, 2001) ................12

Reuben H. Donnelley Corp. v. Krasny Supply Co.,
     227 Ill. App. 3d 414, 592 N.E.2d 8 (1st Dist. 1991) ...................................................9

Rissman v. Rissman,
     213 F.3d 381 (7th Cir. 2000) ........................................................................................14

Schwarz Paper Co. v. International Business Machines,
     No. 00 C 2417 (N.D. Ill. Oct. 4, 2000) .......................................................................3, 8

Siemens Credit Corp. v. Marvik Colour, Inc.,
     859 F. Supp. 686 (S.D.N.Y. 1994) .................................................................................8

Stepan Co. v. Winter Panel Corp.,
     948 F. Supp. 802 (N.D. Ill. 1996) ..................................................................................9

Tirapelli v. Advanced Equities,
     215 F. Supp. 2d 964 (N.D. Ill. 2002) ..........................................................................14

Unicredito Italiano Spa v. JP Morgan Chase Bank,
     288 F. Supp. 2d 485 (S.D.N.Y. 2003) .........................................................................11

Venture Assoc. Corp. v. Zenith Data Sys. Corp.,
     987 F.2d 429 (7th Cir. 1993) ..........................................................................................2

Voelker v. Porsche Cars North America, Inc.,
     353 F.3d 516 (7th Cir. 2003) ..........................................................................................7

Walter Raczynski Product Design v. International Business Machines Corp.,
     No. 92 Civ. 6423, 1993 WL 282722 (N.D. Ill. July 21, 1993) ...........................................2, 6-7

Wright v. Associated Ins. Co. Inc.,
     29 F.3d 1244 (7th Cir. 1994) ...........................................................................................2

## OTHER AUTHORITY

Winning Techniques for Computer and High Tech
     Litigation, The Growth Field of the Information Age,
     Clyde H. Wilson, Jr., 2d Ed. (1995) ..............................................................................15

## INTRODUCTION

International Business Machines Corporation's ("IBM") relationship with M. Block & Sons Inc. ("Block") is governed by comprehensive contracts entered into between two sophisticated commercial entities. These agreements are the September 28, 2001 IBM Customer Agreement ("Customer Agreement"), the September 28, 2001 Statement of Work For the Implementation of JD Edwards One World Enterprise Resource Planning Software and ERPBridge Data Collection ("SOW"), and 18 subsequent Project Change Authorizations ("PCAs"). Block's Amended Complaint asserts numerous causes of action, and seeks recovery for categories of damages, that plainly are precluded by the express terms of these integrated contracts. Further, Block's statutory and common law fraud allegations fail as a matter of law, and plaintiff's attempt to plead around the terms of the contracts to which it agreed should be rejected.

We take Block's allegations in reverse order, beginning with the implied warranty claims (Counts VI and VII) and consequential damages claims (in Counts III-VII). We then turn to Block's statutory and common law fraud claims (Counts I-III).

First, the Customer Agreement, the SOW, and the PCAs conspicuously disclaim the implied warranties of merchantability and fitness for a particular purpose. These express warranty disclaimers are enforceable as a matter of law. Block's implied warranty claims should therefore be dismissed. Section I, below.

Second, in Counts III-VII, Block seeks to recover consequential and incidental damages (e.g., lost profits) that are barred by the Customer Agreement's limitation of liability provision. These damages claims thus fail as a matter of law. Section II, below.

Third, Block's Illinois Consumer Fraud Act ("ICFA") claim (Count III) is barred by the Customer Agreement's New York choice-of-law clause. Section III, below.

Finally, the alleged "misrepresentation" on which Block bases its fraudulent inducement claims (Counts I and II) is a non-actionable subjective opinion statement, not a statement of material fact. Further, the fully integrated contracts expressly provide that Block did not rely on any such oral representation. In all events, Block's Count II recitation of the alleged "misrepresentation" is not actionable because (as pled) it is not even fraudulent. Section IV, below.

For all of these reasons, Counts I, II, III, VI, VII, and the consequential damages allegations in Counts III-VII, should be dismissed.[1]

## **FACTUAL BACKGROUND**

### 1.    **Relevant Contract Terms.**

In September 2001, Block and IBM entered into the Customer Agreement and SOW for implementation of JD Edwards One World Enterprise Resource Planning ("ERP") software and related software then known as ERPBridge. Am. Cmplt. ¶13; Exs. A and B hereto. The SOW expressly incorporates the terms and conditions of the Customer Agreement (Ex. B, SOW at 10, 47, and 73), both of which Block admits it executed. Am. Cmplt. ¶ 13.

Over the course of the ERP implementation, and pursuant to the contractually agreed process for amending the SOW (see Ex. A, Customer Agreement at §1.2, and Ex. B, SOW at 71), the parties agreed to 18 separate revisions to the SOW. Each of these revisions, reflected in separate PCAs, incorporate the relevant terms of the Customer Agreement and the SOW.[2] See

---

[1]    IBM has answered Counts IV (Breach of Express Warranties) and V (Material Breaches of Contract). Paragraph 58 of Count IV, however, relating to an alleged express warranty for ERPBridge software, should be dismissed or stricken for the reasons set forth in n.5, infra.

[2]    In its Amended Complaint, Block refers to, and admits that it signed, the Customer Agreement, the SOW and certain of the PCAs. Am. Cmplt. ¶¶ 13-16, 18-20, 22, 25, 37, 38, 45, 58, 64, 68, 71. A few pages of these contracts are attached to the Amended Complaint as Exs. 2-5. Attached hereto as Exhibits A and B are complete copies of the Customer Agreement and SOW executed between the parties. We further attach PCAs 1, 6, 11, and 23, which, for purposes of this motion, are representative of the 18 PCAs executed between the parties. (Complete

e.g., PCAs 1, 6, 11, and 23 (Exs. C-F hereto) (which are, for purposes of this motion, representative of the PCAs).

The contracts are fully integrated. The parties agreed on the first page of the Customer Agreement and 19 separate times thereafter (by entering into the SOW and the 18 PCAs) that the terms of the contracts "are the complete agreement regarding these transactions, and replace any prior oral or written communications between us." See Ex. A, Customer Agreement at 1; see also Ex. B, SOW at 10, 47, 73; Ex. C, PCA 1 at 7; Ex. D, PCA 6 at 4; Ex. E, PCA 11 at 16; Ex. F, PCA 23 at 1.

The contracts expressly set forth the warranties provided by IBM. See Ex. A, Customer Agreement at §§2.1-2.3; Ex. B, SOW at 72; Ex. D, PCA 6 at §15.2. The Customer Agreement conspicuously disclaims (in capital letters) the implied warranties of merchantability and fitness for a particular purpose:

> THESE WARRANTIES ARE YOUR EXCLUSIVE
> WARRANTIES AND REPLACE ALL OTHER WARRANTIES
> OR CONDITIONS, EXPRESS OR IMPLIED, INCLUDING,
> BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OR
> CONDITIONS OF MERCHANTABILITY AND FITNESS FOR
> A PARTICULAR PURPOSE.

Ex. A, Customer Agreement at §2.2 (emphasis in original).

The SOW reiterates:

---

copies of all PCAs executed between the parties are attached to IBM's Answer to Amended Complaint, Special and Affirmative Defenses, and Counterclaim, filed contemporaneously herewith.) Because these agreements are referred to in the Amended Complaint and its attachments, and Block's claims rely on the contract, they are properly considered in this motion to dismiss and do not convert it into a motion for summary judgment. Schwarz Paper Co. v. International Business Machines, No. 00 C 2417, at *8-11 (N.D. Ill. Oct. 4, 2000) (court considered IBM Customer Agreement on motion to dismiss even though plaintiff did not attach it to complaint); Walter Raczynski Product Design v. International Business Machines Corp., No. 92 Civ. 6423, 1993 WL 282722, *10-11 (N.D. Ill. July 21, 1993) (same); see e.g., Wright v. Associated Ins. Co. Inc., 29 F.3d 1244, 1248 (7th Cir. 1994) (agreement referenced in the complaint was not "outside the pleadings" and was properly considered by the district court when deciding a motion to dismiss); Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) ("[d]ocuments that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim").

> Other than the warranty for IBM services set forth in the
> *Agreement*, we provide no other warranties, whether express or
> implied, in connection with any services or deliverables under this
> Statement of Work, and that all other warranties, including,
> without limitation, the implied warranty of merchantability and
> fitness for particular purpose are expressly disclaimed.

Ex. B, SOW at 72.  And PCA 6 provides:

> Notwithstanding anything to the contrary, IBM provides IBM Data
> Collection "as is" and makes no representations or warranties,
> either express or implied, with respect to IBM Data Collection,
> including without limitation any warranty of merchantability or
> fitness for a particular purpose. . . .

Ex. D, PCA 6, at §15.2.[3]

In addition to disclaiming the implied warranties, the parties agreed to limit IBM's

potential liability to amounts paid by Block for the software and services, and expressly

disclaimed recovery for any consequential or incidental damages:

> IBM is liable for no more than . . . the amount of any other actual
> direct damages up to the greater of $100,000 or the charges (if
> recurring, 12 months' charges apply) for the Product or Service that
> is the subject of the claim. . . .
>
> **Items for Which IBM is Not Liable**
>
> Under no circumstance is IBM, its subcontractors or program
> developers liable for any of the following even if informed of their
> possibility:  1) loss of, or damage to, data; 2) special, incidental, or
> indirect damages or for any economic consequential damages; or
> 3) lost profits, business, revenue, goodwill, or anticipated savings.

Ex. A, Customer Agreement at §1.10 (emphasis in original).

Finally, the parties also agreed to the application of New York law:

> Both you and IBM consent to the application of the laws of the
> State of New York to govern, interpret, and enforce all of your and
> IBM's rights, duties, and obligations arising from, or relating in

---

[3]        In its Amended Complaint, Block attaches as Ex. 5, an earlier draft of PCA 6 that was never executed.
IBM attaches the final, signed version of PCA 6 as Ex. D.  The relevant contractual language quoted above is
identical in both of these documents.  ERPBridge software is also referred to throughout the contracts as "IBM Data
Collection."  Id.

any manner to, the subject matter of this Agreement, without
regard to conflict of law principles.

Ex. A, Customer Agreement at §1.13.

## 2. <u>Allegations Of Block's Amended Complaint.</u>

Despite the parties' express agreement to disclaim both the implied warranty of

merchantability and the warranty of fitness for a particular purpose, Block's Amended

Complaint seeks recovery under both of these theories. <u>See</u> Am. Cmplt., Counts VI and VII.

Block also seeks recovery (in Counts III–VII) for consequential and incidental damages barred

by the contract's limitation of liability provisions. <u>See e.g.</u>, Am. Cmplt. ¶¶ 56, 62, 66, 73, and 80

(seeking damages for payments to third-parties, lost profits, lost business opportunities, costs and

expenses of personnel, costs associated with acquisition of substitute products, etc.). Block

further asserts an ICFA claim (Count III), even though the parties agreed to the application of

New York law. <u>See</u> Ex. A, Customer Agreement at §1.13.

Counts I and II assert common law fraudulent inducement claims. Block alleges that on

November 17, 2000, a meeting took place at its Bedford Park, Illinois headquarters. <u>See</u> Am.

Cmplt. ¶¶ 9-12. There, Block alleges it orally asked IBM questions and that:

> One of Draftke's [Block employee] questions to Ferguson [IBM
> employee] was whether Defendant ever had received any customer
> complaints that Defendant had failed to implement J.D. Edwards
> software successfully. Ferguson replied "No." Ferguson further
> explained that, at one site, the software did require a second "go
> live" before that system performed in a satisfactory manner.

Id. at ¶ 12.

Block claims this was a false representation of material fact (<u>see e.g.</u>, Am. Cmplt. ¶¶ 13-

14), and despite the parties' agreement to the contrary eleven months later (<u>see</u> Ex. A, September

28, 2001 Customer Agreement at 1, contract terms "replace any prior oral or written

5

communications between us"), that Block reasonably relied on it.  <u>See</u> <u>e.g.</u>, Am. Cmplt. ¶¶ 14, 37.

Curiously, Count II recharacterizes the above allegation and states that "[in] concealing the fact that Defendant had never been involved in a failed implementation of J.D. Edwards software, Defendant made a false concealment of material fact during the course of the negotiation process."  Am. Cmplt. ¶ 42; <u>see also</u> ¶ 45 (same).  It is literally impossible, of course, for IBM to have concealed an event that plaintiff alleges in Count II did not occur.[4]

<strong><u>ARGUMENT</u></strong>

## I.   BLOCK'S IMPLIED WARRANTY CLAIMS (COUNTS VI AND VII) MUST BE DISMISSED BECAUSE THEY WERE CONSPICUOUSLY DISCLAIMED.

The Customer Agreement, in all capital letters, expressly disclaims the implied warranties of merchantability and fitness for a particular purpose.  Ex. A, Customer Agreement at §2.2.  The SOW and PCAs repeat this disclaimer.  <u>See also</u> Ex. B, SOW at 72; Ex. D, PCA 6 at §15.2.

Both Illinois and New York courts routinely enforce such provisions.  Indeed, then Magistrate Judge Pallmeyer enforced an almost identical IBM implied warranty disclaimer in <u>Walter Raczynski Product Design v. International Business Machines Corp.</u>, No. 92 Civ. 6423, 1993 WL 282722 (N.D. Ill. July 21, 1993).  There, plaintiff purchased a computer system and accompanying software from IBM, and then sued IBM for, among other things, breach of implied warranties of merchantability and fitness for a particular purpose.  <u>Id.</u> at *3.  Judge

---

[4]    Block's allegations are accepted as true for purposes of this motion to dismiss only.  It may be that the double negatives evident in paragraphs 42 and 45 of the Amended Complaint are a drafting error, but IBM and the Court, for purposes of a Rule 12(b)(6) motion, must accept them as pled.  We also note that Block's Amended Complaint recitation of the alleged "misrepresentation" is markedly different than what it claimed IBM represented in the initial Complaint.  <u>Compare</u> Amended Complaint ¶ 12 <u>with</u> Initial Complaint, filed January 16, 2004 at ¶ 10, "One of the questions which Drafke asked Ferguson was whether IBM had ever had a failed implementation of JD Edwards software."

6

Pallmeyer held, under New York law, that such warranty disclaimers are "presumptively conscionable" in the commercial setting, and that "[t]hese clauses mention merchantability and fitness for a particular purpose, are located and capitalized conspicuously, and are in writing. Thus, these provisions concerning the exclusion of implied warranties are valid under New York Law." Id. at *16. The same result applies here, and Block's implied warranty claims should be dismissed.

Other New York and Illinois federal cases to the same affect are legion. See e.g., Voelker v. Porsche Cars North America, Inc., 353 F.3d 516, 525-26 (7th Cir. 2003) (disclaimer of implied warranties in bold type on lease upheld and claim for breach of implied warranty of merchantability dismissed); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 785 (2nd Cir. 2003) (court finds "AS IS" disclaimer conspicuous and dismisses fraud claim); Landis and Staefka (UK) Ltd. v. Flair International Corp., 60 F. Supp. 2d 14, 22 (E.D.N.Y. 1999) (warranty disclaimer upheld even though it was on back of order form); Maltz v. Union Carbide Chemicals & Plastics Co., Inc., 992 F. Supp. 286, 304 (S.D.N.Y. 1998) ("It is well-settled that under New York law, parties to a contract may exclude or modify implied warranties so long as the warranty disclaimer is conspicuous and specific." (internal cites omitted)); General Electric Capital Corp. v. Munson Marine, Inc., No. 91 Civ. 5090, 1991 WL 256680, at *4-5 (N.D. Ill. Nov. 20, 1991) (disclaimers of implied and express warranties for software enforced).[5]

---

[5]     Paragraph 58 of Block's Amended Complaint (in Count IV) alleges express warranties for IBM's ERPBridge software. PCA 6 and the SOW expressly disclaim any such warranty. See Ex. D hereto, PCA 6 at § 15.2 (software provided "as is" and with no warranties "express or implied"); Ex. B, SOW at 72 (no warranty other than for services). IBM did warrant that its services would be provided "using reasonable care and skill." See Ex. A, Customer Agreement at § 2.1; Ex. B, SOW at 72. IBM therefore, did not move to dismiss Count IV in its entirety. (The ERP software itself was provided by JD Edwards, not IBM. Block, accordingly, has made no warranty claim against IBM for this software.)

II.  **BLOCK'S COUNTS III–VII CLAIMS FOR CONSEQUENTIAL AND INCIDENTAL DAMAGES MUST BE DISMISSED PURSUANT TO THE LIMITATION OF LIABILITY PROVISION.**

Block alleges it is entitled to recover multiple types of consequential and incidental damages. See Am. Cmplt. ¶¶ 56, 62, 66, 73, and 80 (seeking recovery for payments to third-parties, lost profits, lost business opportunities, costs and expenses of personnel, costs associated with acquisition of substitute products, etc.). The parties expressly agreed such damages are not recoverable. See Ex. A, Customer Agreement at §1.10 (limiting liability to amounts paid to IBM, and expressly disclaiming any liability for special, incidental, indirect or consequential damages). Block's claims for consequential and incidental damages should, for this reason, be dismissed.

Judge Korcoras reached this precise conclusion under the Customer Agreement in Schwarz Paper Co. v. International Business Machines, No. 00 C 2417, at *10-11 (N.D. Ill. Oct. 4, 2000). Schwarz involved a contract for implementation of a software package for a replacement computer system. Id. at 2. The Court dismissed claims for consequential and incidental damages (e.g., loss of customer goodwill, lost profits, costs of personnel, etc.), and held that under the Customer Agreements' limitation of liability provision, only direct contract damages are recoverable. Id. at 10-11.

Numerous New York and Illinois cases agree that contractual limitations on liability, like §1.10 of the Customer Agreement, are valid and enforceable, particularly when contained in a contract between two business entities. See e.g., Cognitest Corp. v. Riverside Publishing Co., 107 F.3d 493, 495-97 (7th Cir. 1997) (court dismissed complaint for recovery of consequential damages based on limitation of remedies clause in computer software contract); Siemens Credit Corp. v. Marvik Colour, Inc., 859 F. Supp. 686, 695 (S.D.N.Y. 1994) (enforcing provision limiting damages to the cost of repairing or replacing equipment; court rejected

unconscionability defense, holding that "there is a presumption of conscionability when the contract is between businessmen in a commercial setting") (internal cites omitted); Eldor Contr. Corp. v. County of Nassau, 272 A.D.2d 509, 509-510, 708 N.Y.S.2d 447, 448-49 (N.Y. App. Div. 2000) (enforcing contract provision barring recovery of consequential damages); Laidlaw Transportation, Inc. v. Helena Chemical Co., 255 A.D.2d 869, 870-71, 680 N.Y.S.2d 365, 367 (N.Y. App. Div. 1998) (clause limiting recovery of consequential damages held enforceable; "In cases involving transactions of a commercial nature, it is generally not unconscionable to allocate the risk to the buyer"); Reuben H. Donnelley Corp. v. Krasny Supply Co., 227 Ill. App. 3d 414, 592 N.E.2d 8, 11-12 (1st Dist. 1991) (provision in commercial contract waiving recovery of consequential damages barred lost profits claim) (citing cases).

If Block were able to demonstrate breach of contract, it would be able to recover--in direct damages--up to the amount it paid IBM. Ex. A, Customer Agreement at §1.10. But it plainly is not allowed under the contracts to recover the consequential and incidental damages it seeks in Counts III-VII.[6]

## III. BLOCK'S ICFA CLAIM MUST BE DISMISSED BECAUSE THE PARTIES AGREED NEW YORK LAW APPLIES.

Because the parties have chosen the application of New York law in their contract (Ex. A, Customer Agreement at §1.13), Block's claim under the ICFA must be dismissed.

---

[6]     In Section III, below, we demonstrate that Block's claim under the ICFA must be dismissed in its entirety. But even if Block were able to proceed under the ICFA, it cannot avoid the limitation of liability clause in the Customer Agreement by asserting such a claim. Section 1.10 of the Customer Agreement limits IBM's liability for damages "regardless of the basis on which [Block is] entitled to claim damages from IBM." Ex. A, Customer Agreement § 1.10. Such provisions are routinely enforced and held to bar recovery under the ICFA. See Man Roland Inc. v. Quantum Color Corp., 57 F. Supp. 2d 568, 575-76 (N.D. Ill. 1999) (dismissing claims for consequential damages in complaint with counts for breach of contract and under the ICFA); Lefebvre Intergraphics, Inc. v. Sanden Machine Ltd., 946 F. Supp. 1358, 1372-73 (N.D. Ill. 1996) (contract provision excluding recovery of consequential damages applied to claim under ICFA, as well as claims for breach of contract and warranty); Stepan Co. v. Winter Panel Corp., 948 F. Supp. 802, 807 n.2 (N.D. Ill. 1996) (contract provision excluding recovery of consequential damages prohibits damages sought under ICFA); cf. Gates Rubber Co. v. USM Corp., 508 F.2d 603, 616-17 (7th Cir. 1975) (limitation of liability clause in contract applied to tort claims arising out of contractual relationship).

In diversity cases, such as this one (Am. Cmplt. ¶ 3), Illinois choice of law rules apply. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). "Under Illinois law, an express contractual choice-of-law provision will be enforced and 'given effect . . . unless it would violate fundamental Illinois public policy and Illinois had a 'materially greater interest' in the litigation than the chosen State.'" See Midway Home Entertainment, Inc. v. Atwood Richards, Inc., No. 98 Civ. 2128, 1998 WL 774123, at *2 (N.D. Ill. Oct. 29, 1998) (internal cites omitted); see also DeJohn v. The .TV Corporation Int'l, 245 F. Supp. 2d 913, 918 (N.D. Ill. 2003). Here, IBM is a New York corporation, with its principal place of business in New York. Am. Cmplt. ¶2. The New York choice-of-law provision is thus entirely reasonable in a commercial contract entered into between two business entities. Cf. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12-13 (1972) (setting forth policy reasons for enforcing an analogous forum selection clause in the commercial context).

Numerous courts have held that contractual choice-of-law clauses, similar to the one in the Customer Agreement, require dismissal of ICFA claims. In Midway, the choice-of-law clause stated, "[t]he agreement has been negotiated and executed in and shall be governed by the laws of the State of New York." Midway, 1998 WL 774123, at *2. The Court rejected arguments that the ICFA embodied a fundamental public policy of Illinois and opined that "Illinois courts themselves have enforced parties' choice-of-law provisions even though a foreign state's consumer fraud statute left the Illinois residents no recourse." Id. (citing Potomac Leasing Co. v. Chuck's Pub, Inc., 156 Ill. App. 3d 755, 509 N.E.2d 751, 754 (2d Dist. 1987)). Similarly, in DeJohn, the clause stated the, "rights and obligations and all actions contemplated by [the Agreement] shall be governed by the laws of the United States of America and the State of New York, as if the Agreement was a contract wholly entered into and performed in New

York." DeJohn, 245 F. Supp. 2d 913 at 916.   The court noted that although the clause did not

state that New York law applied to fraud or deceptive practices act claims, the clause was

effective and the ICFA claim was dismissed.  Id. at 922.

     Other decisions to the same affect are Kronos Products, Inc. v. Sasib Bakery Northern

America, Inc., No. 00 Civ. 670, 2002 U.S. Dist. LEXIS 10684, at *15 (N.D. Ill. June 13, 2002)

(Texas choice-of-law clause prevents ICFA claim from surviving summary judgment); Amaro v.

Capital One Bank, No. 97 Civ. 4638, 1998 WL 299396, at *7-9 (N.D. Ill. May 21, 1998)

(Virginia choice-of-law clause barred plaintiff's ICFA claims, even though plaintiffs would not

be able to assert claim under the Virginia Consumer Protection Act); Demitropoulos v. Bank

One Milwaukee, N.A., 915 F. Supp. 1399, 1413-14 (N.D. Ill. 1996) (court enforced clause

stating "[t]his Lease will be construed and enforced in accordance with the laws of the state in

which we are located [Wisconsin]" and dismissed ICFA claim).

     Given the parties' choice of law, Block's ICFA claim cannot stand.[7]

## IV.   BLOCK'S FRAUDULENT INDUCEMENT CLAIMS (COUNTS I AND II) ARE LEGALLY DEFICIENT FOR MULTIPLE REASONS.

### A.   The Alleged "Misrepresentation" Forming the Basis of Counts I and II Is a Subjective Opinion, Not a Statement of Material Fact.

     Under New York law, in order to state a claim for fraudulent inducement, a plaintiff must

allege: "(1) that defendant made a material false representation, (2) with the intent to defraud the

---

[7]     As noted above, Block's ICFA claim should be dismissed in its entirety.  But even if Illinois law applied, several of the "misrepresentations" alleged by Block in Count III are not cognizable under the ICFA.  First, the "misrepresentation" alleged in ¶ 51 (which is based on the allegations contained in ¶ 12) is deficient for the reasons discussed in Section IV, below.  The "misrepresentations" alleged in ¶ 54 are actual contract terms, and, accordingly, cannot support an ICFA claim.  See Randazzo v. Harris Bank of Palatine, 104 F. Supp. 2d 949, 954 (N.D. Ill. 2000) ("the terms and legal effect of a contract are not concealed facts," and thus cannot support an ICFA claim.).  The ¶ 54 "misrepresentations" are also not pled with the particularity required to allege fraud, and should be dismissed for this additional reason.  See Chaikin v. Fidelity and Guar. Life Ins. Co., No. 02 Civ. 6596, 2003 WL 21003715, *3-4 (N.D. Ill. May 1, 2003) (ICFA claim dismissed for failure to plead with particularity).  Tellingly, Block does not even attempt to include the ¶ 54 "misrepresentations" as a basis for its common law fraud counts. See Counts I and II.

plaintiff, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered

damage as a result of that reliance." <u>Unicredito Italiano Spa v. JP Morgan Chase Bank</u>, 288 F.

Supp. 2d 485, 497 (S.D.N.Y. 2003); <u>see also</u> <u>Hologic, Inc. v. Dunworth</u>, No. 98 Civ. 3200, 1999

U.S. Dist. LEXIS 11263, at *4-5 (N.D. Ill. July 19, 1999) (comparable elements under Illinois

law). Reliance is not reasonable, and will not support a claim for fraud, where the statement

alleged to be false is "puffing" or a statement of opinion. <u>See</u> <u>Bavaria Int'l. Aircraft Leasing v.</u>

<u>Clayton</u>, No. 03 Civ. 0377 (NRB), 2003 U.S. Dist. LEXIS 13197, at *10-23 (S.D.N.Y. July 30,

2003); <u>Fagenholz v. AMF Inc.</u>, No. 85 Civ. 3456, 1985 U.S. Dist. LEXIS 13123, at *4-6 (N.D.

Ill. December 5, 1985).

New York and Illinois courts routinely dismiss fraud claims where the claims are based

on subjective opinion statements or sales "puffery" regarding "success." <u>See e.g.</u>, <u>In re:</u>

<u>Razorfish, Inc. Securities Litigation</u>, No. 00 Civ. 9474, 2001 U.S. Dist. LEXIS 14756, at *5-7

(S.D.N.Y. September 19, 2001) (securities fraud claim dismissed where alleged

misrepresentations were "integration efforts were complete" and company had "*successfully*

executed our growth strategy", and <u>citing</u> cases from across the country where affirmations of

"success" were held non-actionable) (emphasis added); <u>Bavaria Int'l. Aircraft Leasing</u>, 2003

U.S. Dist. LEXIS 13197, at *10-23 (dismissing securities fraud claim based on alleged

misrepresentation that company "had achieved the financial stability that will allow the company

to move forward").[8]

---

[8]     For Illinois cases <u>see</u> <u>Connick v. Suzuki Motor Co., Ltd.</u>, 275 Ill. App. 3d 705, 723, 656 N.E.2d 170, 183
(1st Dist. 1995) (statements by automaker promoting the reliability of the Samurai, such as "the Samurai never lets
you down," are non-actionable puffery), <u>aff'd</u> <u>in rel. part</u>, 174 Ill. 2d 482, 675 N.E.2d 584 (1996); <u>Breckenridge v.</u>
<u>Cambridge Homes, Inc.</u>, 246 Ill. App. 3d 810, 823, 616 N.E.2d 615, 623, 624 (2d Dist. 1993) (statements by
developer that home would be built with "expert workmanship" and "custom quality" are subjective comments for
which the developer can not be held liable).

Here, the "misrepresentation" on which Block attempts to build its entire Count I and II fraud case is more subjective than any of the statements held non-actionable in the above cases. See Am. Cmplt. ¶¶ 9-14. Block alleges that it asked whether IBM had received "customer complaints" that ERP installations had not been "successfully implemented," and that IBM responded "no," concealing (presumably) at least one unsuccessful job. Id. But whether an ERP implementation was "successful" or not, would require the Court to wade through at least three levels of subjective interpretation and opinion: (1) what is "successful" to IBM customers other than Block, (2) what Block considers "successful," and (3) what IBM considers "successful." Such multi-layered subjectivity and opinion plainly cannot form the basis for an actionable statement of material fact on which Block could reasonably rely, particularly in the context of the complex ERP software implementation at issue here. See e.g., Razorfish, 2001 U.S. Dist. LEXIS 14756, at *5-7 (citing cases). (We note that Block's Amended Complaint backs away from the less circuitous statement it claimed in its initial Complaint (at ¶ 10) that IBM made. Indeed, Block's initial Complaint (see n.4, supra) said nothing about "customer complaints" regarding "successful implementations").[9]

Finally, as noted above, Block's Count II recharacterization of the above non-actionable opinion statement plainly must be dismissed. In Count II, Block has literally alleged that IBM did nothing wrong. See Am. Cmplt. ¶¶ 42 and 45 (alleging IBM did not disclose that it had no failed implementations). Scrivenor's error or not, Count II fails.

---

[9]     In Counts I and II, ¶¶ 33-48 of the Amended Complaint, Block bases its fraud claims on the more detailed allegations of the alleged "misrepresentation" set forth at ¶¶ 9-14. To the extent Block claims that any of the allegations in ¶¶ 33-48 cure the subjectivity/opinion problems noted above, it would be incorrect. These allegations do not provide the specificity and particularly--the who, what, when and where--required to plead a common law fraud claim. See Galdikas v. Fagan, No. 01 Civ. 4268, 2001 WL 1223539, at *5 (N.D. Ill. Oct. 12, 2001) (common law fraud claim dismissed for failing to plead with particularity, which requires pleading the "identity of the person making the false representation, the time, place, and content of the misrepresentation, and the method by which it was communicated") (internal citation omitted).

**B.    The Opinion Statements Allegedly Relied on By Block Are Also Not
Actionable In Light of the Contracts' Non-Reliance and Integration Clauses.**

Block's fraud allegations fail for the above reasons alone, but they are particularly

unavailing in light of the contracts' integration and non-reliance clauses.  The parties agreed that

the written contracts "are the complete agreement regarding these transactions, and replace any

oral or written communications between us."  Ex. A, Customer Agreement at 1; Ex. B, SOW at

10, 47, 73.  With each revision to the contract (18 additional times), the parties reaffirmed this

promise.  See, e.g., Exs. C-F, PCAs 1, 6, 11, and 23 (incorporating Customer Agreement terms).

The November 17, 2000 "misrepresentation" alleged by Block in paragraphs 9-14 of the

Amended Complaint predates (by a minimum of 11 months)[10] each of the parties' written

affirmations that they were not relying on oral communications.  Under these circumstances,

Block's alleged reliance cannot be reasonable as a matter of law.

New York and Illinois courts both hold that a party's purported reliance on

representations outside the contract cannot be reasonable where the contract contains such

clauses.  See Rissman v. Rissman, 213 F.3d 381, 384 (7th Cir. 2000) ("a written anti-reliance

clause precludes any claim of deceit by prior representations"); Harsco Corporation v. Segui, 91

F.3d 337, 341-48 (2d Cir. 1996) (court affirmed dismissal of fraud claim where disclaimer of

representations precluded plaintiff from establishing reasonable reliance); Tirapelli v. Advanced

Equities, 215 F. Supp. 2d 964, 971-73 (N.D. Ill. 2002) (court enforced non-reliance clause in

contract entered into between sophisticated businessmen); Chicago Messenger Service, Inc. v.

Nextel Communications, Inc., No. 01 Civ. 8820, U.S. Dist. LEXIS 16744, at *25 (N.D. Ill. Sept.

23, 2003) (reliance not justified where oral representation was not a term in the written contract);

---

[10]    The Customer Agreement and SOW were executed on September 28, 2001.  See Exs. A and B. The final
PCA, PCA 23, was executed on October 23, 2003.  See Ex. F.

Donovan v. ABC-NACO, Inc., No. 02 Civ. 1951, 2002 U.S. Dist. LEXIS 12797, at *19 (N.D. Ill. July 12, 2002) ("[s]ilence in a final agreement containing an integration clause – in the face of prior explicit representations–must be deemed an abandonment or excision of those earlier representations" (quotation omitted)); Goldberg v. KZ 72nd, 567 N.Y.S.2d 249, 251-2, 171 A.D.2d 525 (N.Y. App. Div. 1991) (court held reliance on alleged misrepresentations unreasonable as a matter of law where contract contained non-reliance clause).[11]

## CONCLUSION

For all of the foregoing reasons, Counts I, II, III, VI and VII of Block's Amended Complaint, as well as its claims for recovery of consequential and incidental damages in Counts III-VII, and its ERPBridge warranty claim (§ 58 of Count IV), should be dismissed.

Dated: March 19, 2004                    Respectfully submitted,

                                         INTERNATIONAL BUSINESS
                                         MACHINES CORPORATION

                                         By: _____
                                             One of its Attorneys

Todd C. Jacobs
Paul A. Sheldon
Erin E. O'Connor
GRIPPO & ELDEN LLC
227 W. Monroe St., Ste. 3600
Chicago, Illinois 60606
(312) 704-7700

---

[11]     It appears that Block included these legally deficient allegations in an attempt to circumvent the express contract terms to which it agreed. See Counts I and II Prayers for Relief. One of Block's lawyer's in this case authored a book in which he outlines this very purpose. See Winning Techniques for Computer and High Tech Litigation, The Growth Field of the Information Age, Clyde H. Wilson, Jr. 2d Ed. (1995) at 161, 163 ("the biggest single challenge as a plaintiff's attorney is to determine how best to circumvent the limitations of the vendor's contract," and "[t]he traditional strategy to try to circumvent the contract is to sue in tort for fraud in the inducement.") The author also notes that many courts have rejected such attempts. Id. at 329 (citing "recent decisions," including one involving IBM, in which courts have "demonstrated an unreceptiveness to fraud claims"). IBM submits that this Court too, under the above authority, should reject plaintiff's attempt to turn a contract action into a fraud case.