# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 340 | **DATE** | 7/8/2004 |
| **CASE TITLE** | M. Block & Sons, Inc. vs. International Business Machines Cor | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant IBM's motion to dismiss counts I, II, III, VI and VII of Block's amended complaint and claims for consequential damages (R. 12-1) is granted in part and denied in part. Plaintiff has until 7/26/04 to file an amended complaint consistent with this opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 0 8 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 31 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TH | courtroom deputy's initials | date mailed notice | |

2004 JUL -8 AM 7:59
U.S. DISTRICT COURT
CLERK
Date/time received in Central Clerk's Office    mailing deputy initials

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

M. BLOCK & SONS, INC. )
an Illinois Corporation, )
)
Plaintiff, )
)
v. ) Case No. 04 C 340
)
)
INTERNATIONAL BUSINESS )
MACHINES CORP., )
a New York Corporation, )
)
Defendant. )

**DOCKETED JUL 0 8 2004**

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff M. Block & Sons, Inc. ("Block") filed a seven-count Amended Complaint against Defendant International Business Machines Corporation ("IBM"). The Amended Complaint alleges fraudulent inducement (Counts I and II), violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count III), breach of express warranties (Count IV), breach of contract (Count V), and breach of implied warranties (Counts VI and VII). IBM has moved to dismiss Counts I, II, III, VI, and VII pursuant to Rule 12(b)(6). For the reasons stated herein, Defendant's motion is granted in part and denied in part.

### I. Factual Background

Block is an Illinois corporation that runs a wholesale distribution business with a main warehouse operation in Illinois and a secondary warehouse operation in California. (R. 8-1, Am. Compl. ¶ 6.) IBM is a New York corporation. (*Id.* ¶ 2.) In the year 2000, Block began to research the purchase or license of an Enterprise Resource Planning ("ERP") computer system.

(*Id.* ¶ 7.) Block focused on purchasing J.D. Edwards & Co.'s ERP software and contacted IBM to discuss implementation of the J.D. Edwards software. (*Id.* ¶¶ 7-9.) IBM represented that it was skilled in the implementation of such software.

Block alleges that IBM made false representations of material fact and further concealed the material facts during the negotiations in order to induce Block to enter into a contract (R. 8-1, Am. Compl. ¶¶ 33-48.) Namely, on or about November 17, 2000, representatives of Block and IBM met in Bedford Park, Illinois, to discuss a proposal from IBM to implement J.D. Edwards "OneWorld ERP Software." (*Id.* ¶ 9.) Block alleges that IBM represented that it had a program — "J.D. Edwards National Practice" — which focused on the implementation of J.D. Edwards software. (*Id.* ¶ 9.) Block claims that at this meeting, Tracey A. Ferguson of IBM made a misrepresentation to Block representative Allen Drafke, Block's chief financial officer. (*Id.* ¶¶ 11-14.) Specifically, Drafke asked Ferguson "whether [IBM] ever had received any customer complaints that [IBM] had failed to implement J.D. Edwards software successfully," and Ferguson allegedly replied, "no." (*Id.* ¶ 12.) Ferguson added that software at one installation site had required a second "go live" before the system performed satisfactorily. (*Id.* ¶ 12.) Block alleges that it justifiably relied on Ferguson's representations. Block further alleges that in fact, IBM had at least one failed implementation of J.D. Edwards OneWorld Software as of November 2000. Block states that Evans Industries, Inc. filed suit against IBM in September 2000 for breach of contract and fraud following a failed implementation of J.D. Edwards software. (*Id.* ¶ 14.)

Based on IBM's false representations, Block entered into a contractual agreement with IBM in September and October of 2001. (*Id.* ¶ 13.) Together, an "IBM Customer Agreement" and a "Statement of Work for the implementation of JD Edwards OneWorld ERP Software and

2

ERP Bridge Data Collection" comprised the "IBM Contract." (*Id.* ¶ 13.) IBM agreed to implement the software purchased from J.D. Edwards and provide data collection software to perform in conjunction with the J.D. Edwards OneWorld software. IBM represented that it was skilled in the implementation of such software. (*Id.* ¶ 7.) Block alleges that if it had known of IBM's alleged failed implementation of J.D. Edwards software, it would not have entered the contract with IBM. (*Id.* ¶ 15.)

Block further alleges that IBM misrepresented that it had an existing software product called ERP Bridge to act as a data collection software in connection with J.D. Edwards One World software. (*Id.* ¶ 116.) Block claims that Bryan Tipton of IBM represented to Drafke that "ERP Bridge is an excellent solution to complement the OneWorld Advanced Warehouse Module, and the premier J.D. Edwards references for the Advanced Warehouse Module are using ERP Bridge as the RF solution." (*Id.* ¶ 16.) Block alleges that IBM also "represented that there was a long list of 'Standard Functions' in ERP Bridge Data collection, and that there were various 'Custom Functions' in ERP Bridge Collection." (*Id.* ¶ 19.) According to Block, IBM promised and "sought to create the false belief" that ERP Bridge, later renamed "DC Connect," was a product that already existed and contained standard functions that would be modified in a limited manner for Block's use. (*Id.* ¶ 20.) Block claims that IBM made these representations to induce Block to enter the IBM Contract and that IBM had "superior and unique means of knowledge" as to the actual status of ERP Bridge as an existing product. (*Id.* ¶ 20.) During the implementation of the software, Block alleges that neither a standard ERP Bridge nor DC Connect product existed and that the entire system "would have to be custom-programmed from the ground up." Furthermore, IBM informed Block in late 2002 that "all the initial work on DC Connect was useless and had to be redone." (*Id.* ¶ 25.)

3

Block alleges that numerous attempts were necessary to go "live at Block's California operation." (R. 8-1, Am. Compl. ¶ 26.) Block contends that the repeated problems with the system have cost Block about $1.5 million in excess of the original amount that IBM claimed the project would cost. (*Id.* ¶ 29.) Block further alleges that the remainder of the contract cannot be executed because the "disastrous performance for the system in the California operation" means that Block cannot risk attempting to install the software at the Illinois operation. *(Id.* ¶ 29.)

On February 24, 2004, Block filed a seven-count Amended Complaint. In Count I, Block alleges that IBM fraudulently induced Block to enter into the IBM Contract by making misrepresentations as to prior failed implementations of J.D. Edwards software. In Count II, Block claims that IBM fraudulently induced Block to enter the contract also by concealing "the fact that Defendant had never been involved in a failed implementation of J.D. Edwards software."[1]

In Count III, Block claims that it is entitled to relief under the ICFA. Block claims that IBM violated the ICFA by stating that it had never been involved in a failed implementation of J.D. Edwards software, by representing that ERP Bridge and DC Connect were existing products, and by failing to disclose that ERP Bridge and DC Connect needed to be "virtually custom-programmed from the ground up." (*Id.* ¶ 52.)

In Count IV, Block alleges that IBM materially breached express warranties that were incorporated in the integrated IBM Contract. In Count V, Block alleges that IBM made material breaches of contract by not providing "functional and operative products," by failing to "provide products that performed in accordance with warranties," and by failing to provide products that

---

[1] It is clear from the text of the rest of the complaint and from Block's response to the motion to dismiss that the double negative was a clerical error.

4

"performed in accordance with Defendant's representations and warranties." (*Id.* ¶ 65.) In Count VI, Block claims that there was also a breach of implied warranty of merchantability. (*Id.* ¶¶ 67-73.) Block alleges that the disclaimers are not enforceable because they were not sufficiently conspicuous and they do not apply to the products that failed to perform. (*Id.* ¶ 69.) Block also alleges that the circumstances of the case make enforcement of the implied warranty disclaimers unconscionable. (*Id.* ¶ 69.)

In Count VII, Block alleges that IBM breached the implied warranty of fitness for a particular purpose. Block argues that the disclaimers and limitations on implied warranties do not apply to the products that actually failed to perform. (*Id.* ¶ 76.) Block alleges that the disclaimers were not sufficiently conspicuous and that the enforcement of them would be unconscionable under the circumstances. (*Id.* ¶ 77.) Block requests that the limited damages contract clause be set aside in reference to Counts III, IV, V, VI, and VII.

IBM has moved to dismiss Counts I, II, III, VI, and VII of Block's Amended Compliant. IBM also moves to dismiss Block's claims for consequential damages in Counts III, IV, V, VI, and VII, arguing that the limitation of liability provision in the contract precludes these damages.

## II. Legal Standards

A Rule 12(b)(6) motion tests the sufficiency of the complaint, it is not designed to resolve the case on the merits. *Petri v. Gatlin*, 997 F.Supp. 956, 963 (N.D. Ill. 1997) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990)). When determining whether to grant a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). A court must also draw all reasonable inferences in the plaintiff's favor. *Id.* The court should dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984).

## III. Choice of Law

This Court will first address the applicable choice of law in this case. A federal court sitting in diversity looks to the forum state to determine how the state's "conflict of law principles treat choice of law clauses in contracts." *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 330 (7th Cir. 1987); *see also, Midwest Grain Products of Illinois, Inc. v. Productization, Inc.*, 228 F.3d 784, 787 (7th Cir. 2000). Illinois courts honor a contractual choice of law clause unless the applicable law is "dangerous, inconvenient, immoral, or contrary to public policy." *DeValk Lincoln Mercury, Inc.*, 811 F.2d at 330. Illinois courts generally give effect to contractual choice of law clauses. *Great Lakes Overseas, Inc. v. Wah Kwong Shipping Group, Ltd.*, 990 F.2d 990, 994 (7th Cir. 1993).

Plaintiff does not dispute that New York law governs its contract claims, but contends that Illinois law controls its fraud claim. The choice of law provision in the IBM Contract states that:

> Both you [Block] and IBM consent to the application of the laws of the State of New York to govern, interpret, and enforce all of your and IBM's rights, duties, and obligations arising from, or relating in any manner to, the subject matter of this Agreement, without regard to conflict of law principles.

(R. 12-1, Memo. in Support of Mot. to Dismiss at 4-5.)

A two part analysis applies to determine, "the breadth of a contractual choice-of-law provision." *Birnberg v. Milk St. Residential Assoc. Ltd. P'ship.*, Nos. 02 C 0978, 02 C 3436, 2003 WL 151929 at * 13 (N.D. Ill. Jan. 21, 2003); *see also Medline Indus., Inc. v. Maersk Medical Ltd.*, 230 F. Supp. 2d 857, 863 (N.D. Ill. 2002); *Precision Screen Mach., Inc. v. Elexon,*

6

*Inc.*, No. 95 C 1730, 1996 WL 495564 at *2-3 (N.D. Ill. Aug. 26, 1996). The first part of the analysis "examine[s] the language of the contract's choice-of-law clause to determine if the parties 'intended [it] to govern all claims between them.'" *Birnberg*, 2003 WL 151929 at *13 (quoting *Medline Indus. Inc.*, 230 F. Supp. 2d at 863). The second part of the analysis focuses on whether a tort claim depends on the contract. *Id.* at 14. Even if intent is not present, tort claims that are dependent on a contract are "subject to [the] contract's choice-of-law clause regardless of the breadth of the clause." *Medline Indus. Inc.*, 230 F. Supp. 2d at 862. To determine if a tort claim depends on a contract, courts examine whether: (1) "the [claim] alleges a wrong based upon interpretation and construction of the contract," *Birnberg*, 2003 WL 151929 at *14 (quoting *Medline Indus., Inc.*, 230 F. Supp. 2d at 862); (2) "the 'tort claims are closely related to the parties' contractual relationship," *Birnberg*, 2003 WL 151929 at *14 (quoting *Miyano Mach. USA, Inc. v. Zonar*, No. 92 C 2385, 1994 WL 233649 at *2 (N.D. Ill. May 23, 1994)); and (3) "the tort claim 'could exist without' the contractual agreement which contains the choice-of-law provision." *Birnberg*, 2003 WL 151929 at *14 (quoting *Precision Screen Mach. Inc.*, 1996 WL 495564, *2-3.

The language of the choice of law clause in the IBM Contract shows that the parties intended for New York law to apply to not only contractual claims, but also other claims related to the contract. The clause states that the laws of New York will govern any "rights, duties, and obligations arising from, or relating in any manner to, the subject matter of this Agreement." This provision indicates that the parties intended New York law to apply broadly to matters related to or arising out of the contractual obligations. The term "arising out of" in forum selection clauses includes all disputes which "arguably depend on the construction of an agreement." *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994).

7

The choice of law clause will thus be interpreted to apply broadly to disputes between the parties related to the IBM Contract.

Applying the second part of the two-part test from *Birnberg*, Plaintiff's claims of fraudulent misrepresentation, fraudulent concealment, and violation of the ICFA all allege a wrong based on construction, or formation, of the contract. The claims also are closely related to the contractual relationship. Further, Plaintiff does not claim that New York law is, "dangerous, inconvenient, immoral, or contrary to public policy." Accordingly, New York law applies to the claims of fraudulent misrepresentation, fraudulent concealment, and the alleged violations of the ICFA. *DeValk Lincoln Mercury, Inc.*, 811 F.2d at 330.

## IV.   Counts I and II: Fraudulent Inducement

### A.   Statement of Opinion

In order to state a claim for fraudulent inducement under New York law, a plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damages as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2nd Cir. 1995). *See also Unicredito Italiano Spa v. JP Morgan Chase Bank*, 288 F. Supp. 2d 485, 497 (S.D.N.Y. 2003). IBM has moved to dismiss Counts I and II on the basis that Block did not properly allege all elements of fraudulent inducement under New York law.

IBM claims that the alleged misrepresentation of material fact is merely sales "'puffing' or a statement of opinion." IBM argues that Block's alleged reliance on the statement is therefore not reasonable. IBM states that New York courts dismiss fraud claims, "where the claims are based on subjective opinion statements or sales 'puffery' regarding 'success.'" (R.

8

12-1, Memo. in Support of Mot. to Dismiss at 12.) IBM relies on several securities fraud cases where the courts considered phrases such as the "acquisition and integration has been a success" to be merely puffing or opinion statements. According to New York law, a claim for fraud is not actionable if the alleged misrepresentation is merely a statement of opinion or "puffery." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2nd Cir. 1994); *see also Zanani v. Savad*, 630 N.Y.S.2d 89, 90 (N.Y.A.D. 1995) (For fraud to be actionable, the false representation allegedly relied on, "must relate to a past or existing fact, or something equivalent thereto, as distinguished from a mere estimate or expression of opinion."). Plaintiff has alleged a misrepresentation in connection with a material fact — whether or not IBM failed in implementing a certain type of software. Thus, Plaintiff's complaint contains allegations of more than mere puffery. Based on the allegations in the complaint, IBM's attempt to characterize the alleged misrepresentations as opinion or puffery fails.

### B. Scrivenors Error

IBM also contends that the Court should dismiss Count Two based on the "scrivener's error" in the complaint. (R. 12-2, Memo. in Support of Mot. to Dismiss at 13.) Plaintiff admits that it made an "obvious clerical error" when it alleged that "in concealing the fact that Defendant had *never* been involved in a failed implementation," rather than "in concealing the fact that Defendant had been involved in a failed implementation." The Court dismisses Count Two based on this error without prejudice, and grants Plaintiff leave to amend the error.

### C. Non-Reliance and Integration Clause

IBM claims that Block's fraud allegations also fail because the contract contains a "non-reliance" clause. The clause in question states that the written contracts "are the complete agreement regarding these transactions, and replace any oral or written communications between

us." (R. 24-1, Mot. to Dismiss, Ex. A, Customer Agreement at 1; Ex. B, SOW at 10, 47, 73.) IBM claims that this means Block's alleged reliance on statements by IBM that it had never had a failed implementation cannot be reasonable." (R 12-1, Mot. to Dismiss at 14.) Under New York law, however, if a party can establish that he was induced to enter a contract by fraud, the party may escape liability under the contract, "even when the contract contains an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made." *Manufacturers Hanover Trust Co. v. Yanakas*, 7 F.3d 310, 315 (2nd Cir. 1993) (quotation omitted).

The New York Court of Appeals has held that while normally "a general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract," if the complaint includes a cause of action for fraud, "the parol evidence rule is not a bar to showing the fraud — either in the inducement or in the execution." *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 598-599 (N.Y. 1959). In *Danann*, the court dismissed plaintiff's fraudulent inducement claim based on misrepresentations about the operation expenses and profits of a building where plaintiff signed a contract stating that defendant had not "made and does not make any representations" about expenses or operation and that plaintiff was not "relying upon any statement or representation, not embodied in this contract, made by the other." *Id.* at 597-599. If the plaintiff has "in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded," then the specific disclaimer "destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations." *Id.* at 598-599.

Courts applying New York law have consistently followed the *Danann* holding with little modification. *See Hobart v. Schuler*, 55 N.Y.2d 1023, 1024 (N.Y. 1982) (Stock purchase

agreement, "which states that all representations, warranties, understandings and agreements between the parties are set forth in the agreement" is a "general merger clause" and is not sufficient to "bar parol evidence of a fraudulent misrepresentation); *Midway Home Entm't, Inc. v. Atwood Richards, Inc.*, No. 98 C 2128, 1998 WL 774123 at *4 (N.D. Ill. Oct. 29, 1998).

In *Sotheby's Fin. Serv. Inc. v. Baran*, No. 00 Civ. 7897 BSJ, 2003 WL 21756126 at *5 (S.D.N.Y. July 29, 2003), the court noted that contracts must contain "explicit disclaimers of the specific representations that form the basis of the claim for fraudulent inducement in order to be considered sufficiently particular to bar that defense." The clause in the contract between IBM and Block resembles a general integration clause and not a specific non-reliance clause. While the clause does state that the contract replaces "any oral or written communications between us," it does not specifically disclaim the alleged representations made in inducement of the contract. The contract is silent on whether or not there have been any customer complaints of prior failed implementations of J.D. Edwards software. The court in *Hobart* emphasized that the fraudulent representation at issue was "not specifically contradicted by any of the detailed representations or warranties contained in the agreement" and thus was not barred by the general merger clause of the agreement. *Hobart*, 55 N.Y.2d at 1023. The clause in the IBM contract is a general integration clause and thus does not bar parol evidence of a fraudulent misrepresentation. Since Block's fraud was correctly pleaded, the motion to dismiss Counts I and II is denied.

V.      **Count III, Illinois Consumer Fraud and Deceptive Practices Act**

IBM alleges that the Court should dismiss Block's ICFA claim because the choice-of-law clause in the contract selects New York law to govern the contract and related controversies. The Court agrees. Because New York law controls for the reasons set forth above, Plaintiff cannot bring an Illinois statutory claim against Defendant. While public policy concerns can

11

override choice of law clauses, Block has not identified any concerns sufficient to override the contract terms. *See Continental Ill. Nat'l Bank and Trust Co. of Chicago v. Premier Sys., Inc.*, No. 88 C 7703, 1989 WL 24122 at *6 (N.D. Ill. Mar. 14, 1989). The motion to dismiss Count III is granted.

## VI. Block's Claims for Consequential and Incidental Damages (Counts III - VII)

IBM next moves to dismiss the claims for consequential and incidental damages in Counts III - VII. Specifically, IBM alleges that the limitation-of-liability provision in the contract with Block prohibits recovery of both consequential and incidental damages.

Under New York law, consequential damages may be excluded in a contract, "unless the limitation or exclusion is unconscionable." N.Y. U.C.C. § 2-719(3) (McKinney 1993); *see McNally Wellman Co. v. N.Y. State Elec. & Gas Co.*, 63 F.3d 1188, 1198 (2nd Cir. 1995). Unconscionability can be shown by "an absence of meaningful choice" that results in "contract terms which are unreasonably favorable to the other party." *State v. Avco Fin. Serv. Inc.*, 50 N.Y.2d 383, 429 (N.Y. 1980). Unconscionability is a question of law, which requires "an inquiry into any inequities of bargaining power when the parties drafted the contract," and a showing that the contract was both procedurally and substantively unconscionable when made. That is, a plaintiff must show an absence of meaningful choice together with contract terms which are unreasonably favorable to the defendant. *Id.* at 1198 (quotations omitted); *see also Williams v Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). While it is a question of law whether the contract is unconscionable, it is a question of fact whether or not the circumstances and the "process by which the contract was formed" show a lack of meaningful choice. *Siemens Credit Corp. v. Marvik Colour, Inc.*, 859 F. Supp. 686, 695 (S.D.N.Y. 1994). Determination of procedural unconscionability requires an examination of matters including

12

"whether deceptive or high-pressured tactics were employed" in the transaction. *Gillman v. Chase Mannhattan Bank*, 73 N.Y.2d 1, 11 (N.Y. 1988). In viewing the complaint in the light most favorable to Block, the Court cannot conclude at this stage that the IBM Contract prohibits Block from recovering consequential damages. Accordingly, the motion to dismiss claims for consequential damages under Counts IV, V, VI, and VII is denied. The motion to dismiss claims for consequential and incidental damages under Count III is granted as Illinois statutory law does not apply.

While the terms of U.C.C. § 2-719(3) only address limitations on consequential damages, "courts uniformly apply its unconscionability standard to limitations on incidental damages as well." *McNally Wellman Co.*, 63 F.3d at 1198; *see also, Shuldman v. DaimlerChrysler Corp.*, 768 N.Y.S.2d 214, 216 (N.Y. App. Div. 2003) (Plaintiff's claims for incidental damages were dismissed because "under state law, the test is whether the limitation is unconscionable (see U.C.C. 2-719(3))," and the court found, "the limitation on incidental damages in Daimler's warranty is not unconscionable"). Accordingly, for the same reasons discussed above, IBM's motion to dismiss Block's claims for incidental damages is denied.

## VII. Implied Warranty Claims (Counts IV, VI and VII)

IBM seeks to dismiss Block's claims in Counts IV, VI, and VII based on implied warranties of merchantability and fitness for a particular purpose. IBM argues that the Customer Agreement, as well as the SOW and PCAs, expressly disclaim such warranties. IBM further seeks to strike Block's claims for express warranties for the ERP Bridge software.

### A. The ERP Bridge Software Claim for Breach of Warranty

IBM argues that the "as is" language in PCA 6[2] and the SOW agreement[3] defeats Block's claims for express warranties on the ERP Bridge software. IBM contends that this software did not include any warranties "express or implied." Block argues in response that the "as is" and "no warranty" disclaimers were not conspicuous, and that "as-is" disclaimers are ineffective if they conflict with an express warranty such as the description of the products that was incorporated into the IBM Contract. An "as is" disclaimer must be conspicuous in order to be effective. *Koenig Iron Works, Inc. v. Sterling Factories, Inc.*, No. 89 CIV 4257 (THK),1999 WL 178785 at *5 (S.D.N.Y. Mar. 30, 1990). The "as is" disclaimer here is not capitalized, boldfaced, in a larger type than the surrounding type, or highlighted in the SOW or PCA. The Court cannot conclude that these disclaimers are conspicuous as a matter of law. The motion to dismiss or strike Count IV is denied.

---

[2] PCA 6 states that:

> Notwithstanding anything to the contrary, IBM provides IBM Data Collection "as is" and makes no representations or warranties, either express or implied, with respect to IBM Data Collection, including without limitation any warranty of merchantability or fitness for a particular purpose... (R. 24-1, Mot. to Dismiss, Ex. D. PCA 6, at § 15.2.)

[3] The SOW agreement states that:

> Other than the warranty for IBM services set forth in the *Agreement*, we provide no other warranties, whether express or implied, in connection with any services or deliverables under this Statement of Work, and that all other warranties, including, without limitation, the implied warranty of merchantability and fitness for particular purpose are expressly disclaimed. (R. 24-1, Mot. to Dismiss, Ex. B, SOW at 72.)

14

## B. IBM's Claims for Breach of Implied Warranties

The disclaimer language of the Customer Agreement is in capital letters and states that:

> These warranties are your exclusive warranties and replace all other warranties or conditions, express or implied, including, but not limited to, the implied warranties or conditions of merchantability and fitness for a particular purpose.

(R. 24-1, Mot. to Dismiss, Ex. A, Customer Agreement at § 2.2.) IBM argues that this disclaimer language is conspicuous and accordingly, the Court should dismiss Counts VI and VII.

The UCC provides that:

> A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed. . . . Language in the body of a form is "conspicuous" if it is in larger or other contrasting type or color. . . . Whether a term or clause is "conspicuous" or not is for decision by the court.

UCC § 1-201(2). *See Landis and Staefa (UK) Ltd. v. Flair Intern. Corp.*, 60 F.Supp.2d 14, 22 (E.D.N.Y. Aug. 12, 1999). Examples of conspicuousness include, "a heading in capitals equal to or greater in size than the surrounding text," contrasting type, font, or color to the surrounding text of the same or lesser size," and language larger than surrounding text or contrasting in "type, font, or color." UCC § 1-201(2). In this instance, the disclaimer in the Customer Agreement was conspicuous as it was in capital letters and "set off" from the rest of the text by spaces. Although the disclaimer was not in bold letters as other text on the page, it was set off by a bold subheading that stated, "Extent of Warranty." Block argues that this disclaimer is not conspicuous enough because "Extent of Warranty" makes no mention of disclaimer and because other text on the page is arguably more noticeable as it is bold and in capitals. This is a contract between two sophisticated parties, however, and the text was in all capital letters and thus did

15

stand out such that a "reasonable person" should have noticed the language. *See Cayuga Harvester, Inc. v. Allis-Chalmers Corp.*, 465 N.Y.S.2d 606, 617 (N.Y. App. Div. 1983) ("When businessmen contract in a commercial setting, a presumption of conscionability arises.") (quotations and citations omitted). The Court agrees that this disclaimer is conspicuous. *See Walter Raczynski Prod. Design v. Int'l Bus. Mach. Corp.*, No. 92 C 6423, 1993 WL 282722 (N.D. Ill. July 21, 1993). Accordingly, IBM's claims for breach of implied warranties in Counts VI and VII are dismissed.

## CONCLUSION

IBM's motion to dismiss Counts I, II, III, VI and VII is granted in part and denied in part. It is granted with respect to Counts III, VI and VII. It is denied regarding Counts I, II and IV. Plaintiff has until July 26, 2004 to file an amended complaint consistent with this opinion.

Dated: July 8, 2004             ENTERED:

*[signature]*
AMY J. ST. EVE
United States District Court Judge